STATE OF NORTH CAROLINA v. JOHN THOMAS FISHER, JR.

No. 763SC798

(Filed 6 April 1977)

1. Criminal Law § 117— charge on scrutiny of defendant's testimony

The trial court properly instructed the jury to scrutinize carefully defendant's testimony in light of his interest in the outcome of the case where the court further instructed that if the jury believed defendant, it should give his testimony the same weight as that of any disinterested witness.

2. Constitutional Law § 33; Criminal Law §§ 48, 89— rape — failure to mention affair with prosecutrix — impeachment — right to silence

In this prosecution for rape, an officer's testimony that defendant did not mention an alleged affair with the prosecutrix was admissible to impeach defendant's in-court testimony that he had had an affair with the prosecutrix and did not violate defendant's Fifth Amendment right to remain silent.

APPEAL by defendant from *Friday, Judge.* Judgment entered 30 April 1976. Heard in the Court of Appeals 10 March 1977.

Defendant was indicted for first-degree rape, convicted by a jury of second-degree rape, and sentenced to 50 to 70 years.

State's evidence tended to show that the prosecuting witness, a 56 year old woman, worked for a real estate broker renting apartments and houses and collecting rentals; that she rented an apartment to defendant in the summer of 1975; that defendant was slow in paying his rent and she had to call him repeatedly in order to collect; that on 14 August 1975 she went to defendant's apartment around 6:00 p.m. to collect the rent; that defendant asked her to come in and help him find

a leak in the bathroom plumbing; that she entered the bathroom and was looking for the leak when defendant struck her with his fists knocked her to the floor, grabbed her, and tried to drown her in a bathtub of water; that a knife fell from defendant's pants during the struggle; that she grabbed the knife and attempted to stab the defendant but defendant took it away; that defendant accused her of charging too much rent; that defendant locked the door to the apartment; that the prosecuting witness tried to talk and reason with defendant; that she ran to the door and attempted to escape but defendant grabbed her and a struggle ensued; that defendant told her to take her clothes off or he would kill her; that while defendant was holding the knife she took her clothes off; that defendant raped her; that she was cut at some point during the attack and after being raped she told defendant that she had to go to the hospital; that defendant drove her to the hospital after ordering her that she should claim to have been injured during a fall; that she tried to get help from a man that came up to her while she was getting in the car but he did not understand; that she called her daughter and husband from the hospital but did not try to contact the police because defendant was still beside her in the phone booth with the knife; that after her daughter arrived she was able to convince defendant that he had to leave and gave him $5.00 for a cab; that she then told of the rape and was examined; and that the examination revealed the presence of sperm in her vagina.

Defendant's evidence tended to show that the prosecuting witness initiated the sexual relationship between them as soon as he moved in; that she promised him a lower rent in return for sex; that on 14 August she came to his apartment and told him that two white men had just assaulted her; that she came in the apartment and they had sex; and that he then took her to the hospital.

In rebuttal, State called Officer Rodgers. Rodgers testified that he had interviewed defendant after his arrest and that defendant never claimed to have been having an affair with the prosecuting witness.

Defendant appealed.

*Attorney General Edmisten, by Associate Attorney Jo Anne Sanford Routh.*

*Beaman, Kellum, Mills & Kafer, P.A., by James C. Mills, for the defendant.*

MARTIN, Judge.

[1] The defendant first contends that the trial court erred in instructing the jury to consider defendant's testimony in light of his interest in the outcome. He argues that such an instruction constitutes an expression of opinion as to defendant's credibility in violation of G.S. 1-180. The challenged portion of the charge is as follows:

> "Now, ladies and gentlemen of the jury, the Court instructs you that when a defendant in a criminal action takes the witness stand as a witness in his own behalf that you, the jury, should scrutinize, that is you should look over carefully his testimony in the light of his interest in the outcome of this case here. Now, the Court further instructs you, ladies and gentlemen of the jury, that if after scrutiny of his evidence you believe the witness, then you will give his testimony the same weight as that of any other disinterested witness in the trial of this case."

It is well settled that an instruction to scrutinize a defendant's testimony, with *further* instructions that if the jury should believe him worthy of belief it should give his testimony as full credit as that of any other witness, is without prejudicial error. *State v. Gaines,* 283 N.C. 33, 194 S.E. 2d 839 (1973); *State v. Barrow,* 276 N.C. 381, 172 S.E. 2d 512 (1970). The court's instructions were a correct statement of the law and it was proper to give such instructions in a criminal case. This assignment of error is overruled.

[2] Finally, the defendant contends the court violated his Fifth Amendment right to remain silent by impressing the jury with that part of the State's evidence which revealed that the defendant failed to mention the alleged affair with the prosecuting witness at the time he was arrested by the police. In summarizing the rebuttal evidence, the judge instructed the jury that Officer Rodgers had been recalled by the State and that he had "said that the defendant did not mention any affair." We note that defendant not only failed to make any objection to

this recapitulation of the evidence but he also failed to object to the original admission of this evidence at trial.

The defendant cites the case of *Doyle v. Ohio,* 426 U.S. 610, 49 L.Ed. 2d 91, 96 S.Ct. 2240 (1976). In that case, the petitioners were given warnings in line with *Miranda v. Arizona* after their arrest, but remained silent. During the course of their separate trials each gave an exculpatory story that had not been previously told to the police or to the prosecutor. Over their counsel's objection, they were each cross-examined about their failure to tell the exculpatory story at the time of their arrest. The Supreme Court held that a prosecutor's impeachment of a defendant's exculpatory story, told for the first time at trial, by cross-examining the defendant about his failure to have told the story after receiving Miranda warnings at the time of his arrest violated the Due Process Clause of the Fourteenth Amendment. The Court reasoned that post-arrest silence following such warnings is insolubly ambiguous and that it would be fundamentally unfair to allow an arrestee's silence to be used to impeach an explanation subsequently given at trial after he had been impliedly assured, by the Miranda warning, that silence would carry no penalty.

We find the case at bar distinguishable from *Doyle v. Ohio, supra.* This case does not present a situation in which a defendant's exercise of his right to remain silent is used against him. Here, the defendant testified that he and the prosecuting witness had been having an affair. In rebuttal, without objection by defendant, Officer Rodgers was permitted to testify that during his investigation he had talked with the defendant on two occasions; that the defendant did not tell him that he was having an affair with the prosecuting witness; and that he did not mention that he had had sexual relations with her. The defendant's statement to Officer Windham, in contrast thereto, was to the effect that the prosecuting witness came up the steps of his apartment; that she looked as though she had been injured; that she said she had had a fight with two tenants; and that she asked him to take her to the hospital. There is no evidence that the defendant mentioned an affair to Officer Windham.

Our Supreme Court has followed other jurisdictions in holding that:

" ' . . . [I]f [a] former statement fails to mention a material circumstance presently testified to, which it would

have been natural to mention in the prior statement, the prior statement is sufficiently inconsistent,' [citation omitted], and is termed an *indirect inconsistency.*" (Citations omitted.) *State v. Mack,* 282 N.C. 334, 340, 193 S.E. 2d 71, 75 (1972).

Moreover, our courts have also made it clear that prior inconsistent statements are admissible for the purpose of impeachment. *State v. Mack, supra; State v. Chance,* 279 N.C. 643, 185 S.E. 2d 227 (1971). Accordingly, if the defendant in this case had a prior conversation with Officer Rodgers and, at that time, *failed* to mention a material circumstance later testified to at trial, then the prior statement was properly admitted for impeachment purposes.

Applying the foregoing principles, we conclude that the defendant's in-court testimony that he had had an affair with the prosecuting witness was inconsistent with his earlier *failure* to so state at the time he talked with Officer Rodgers. Therefore, his failure to tell the officer of the affair when it was natural to do so was indirectly inconsistent with his in-court testimony concerning such a relationship. Hence, evidence of such failure was admissible to impeach his in-court testimony and the trial court did not err in recounting it.

The defendant received a fair trial free of prejudicial error.

Judges MORRIS and VAUGHN concur.